OPINION
Plaintiff-appellant Evelyn Schwab appeals from the October 23, 1998, Judgment Entry of the Family Court Division of the Stark County Court of Common Pleas.
 STATEMENT OF THE FACTS AND CASE
On June 29, 1995, appellant Evelyn Schwab, who had signed an antenuptial agreement prior to her marriage, filed a Complaint for Legal Separation against appellee Earl Schwab. The two had been married since 1981, when appellant was 70 years old and appellee was 73 years old, and had no children. Appellee, on August 2, 1995, filed a counterclaim for divorce. Appellant and appellee were granted an uncontested divorce on March 19, 1997, when appellant was 86 years of age and appellee was 89 years of age. Pursuant to the Agreed Judgment Entry (Divorce) filed on such date, the trial court ordered that, during appellee's lifetime, appellant would not have any property right or interest in appellee's State Teacher Retirement System (STRS) benefits. As of July 31, 1996, appellee received a monthly STRS benefit of $1,180.06 and, in addition, also received STRS benefits from his deceased wife's account. The Decree stated: "[I]t is hereby ordered that during Defendant's lifetime, Plaintiff shall not have any property right or interest in Defendant's State Teachers Retirement System monthly benefits. However, with respect to Defendant's State Teachers Retirement System Pension, it is further ORDERED that Plaintiff shall be deemed the "surviving spouse" and/or primary beneficiary of Defendant for the purpose of a Joint and Survivor Annuity and shall be entitled to receive all benefits available to said surviving spouse and/or primary beneficiary . . ."
The divorce decree also listed sixteen different annuities of which the appellee was the owner. Appellant was a joint annuitant on three of those accounts and, with that limited exception, the annuities "shall be Defendant's (appellee's) sole individual property free and clear of any claims on the part of Plaintiff." Income from the annuities was over $1,000.00 per month. (This is based on appellee's 1996 income tax form after subtracting $1,180.00 per month for STRS from $26,960.00 in yearly income from pensions and annuities.) With respect to the issue of spousal support, the Agreed Entry stated as follows: "The Court specifically finds that the Prenuptial Agreement executed by the parties on November 24, 1981, does not prevent or prohibit the payment of spousal support from Defendant to Plaintiff. Gross v. Gross (1984), 11 Ohio St.3d 99. It is therefore ORDERED that Defendant shall pay to Plaintiff the sum of Five Thousand Dollars ($5,000.00) as and for spousal support and said amount shall be paid by Defendant to Plaintiff in one lump sum payment upon the filing of this Decree of Divorce. Defendant's obligation to pay said lump sum amount shall not terminate upon the death of Defendant or the death of Plaintiff and shall become an asset of Plaintiff's estate.
The Court shall retain jurisdiction to modify the term and amount of future spousal support upon a change in circumstances and either party may file a motion to modify spousal support on or after February 1, 1998.
Pursuant to the terms of the agreed entry, $5,000.00 was paid by appellee to appellant. At the time of the divorce, appellant, who lived alone, received $804.00 per month in Social Security benefits and $100.00 per month from two annuities, for a total monthly income of $904.00. Her monthly living expenses totaled $959.00. Appellee was residing in the Canton Christian Home at the time of the divorce. In 1996, appellee's total unadjusted income as listed on his 1996 federal income tax return totaled $38,016.00, of which $11,056.00 was from Social Security benefits and $26,960.00 was from pensions and annuities. Whereas both the Social Security benefits and appellee's STRS benefits have cost of living adjustments, there is no cost of living adjustment in the payments under the annuities. Rather, the payments under the annuities are fixed. Out of his 1996 income, appellee donated $7,755.00 to charitable organizations and paid $1,600.00 a month to Canton Christian Home. On February 4, 1998, appellant filed a Motion to Modify Spousal Support stating that appellant's financial needs had increased since the March 19, 1997, Agreed Judgment Entry due to health problems, and appellee's income had increased. A hearing on appellant's motion was held on June 16, 1998, before a Domestic Relations Magistrate. Counsel agreed to submit the matter to the court on arguments of counsel, documents submitted by agreement, and the court file, which included a transcript of the appellant's July 16, 1996, deposition. Due to illness, appellee was not present at the June 16, 1998, hearing. At the hearing, appellant's counsel submitted a February 9, 1998, letter to the court from a psychologist indicating that appellant was in the "midst of a dementia of the senile onset variety" and that, based on a reasonable psychological certainty, appellant was "currently unable to function independently without a significant degree of extramural assistance." Appellant's counsel argued that, because of appellant's health problems and her accompanying need for a health care worker, her living expenses had increased by approximately $1,000.00 per month whereas her monthly income had increased to only $973.00 from $904.00. To substantiate appellee's corresponding increase in income, appellant's counsel proffered appellee's 1997 federal income tax return into evidence. The return reveals that in 1997, appellee received a total of $32,998.00 in pensions and annuities and $11,062.00 in Social Security benefits, for a total unadjusted income of $44,060.00, a $5,984.00 increase since 1996. Appellee made $8,743.00 in charitable contributions in 1997. Appellee's counsel, in turn, argued that any increase in appellee's income was due to cost of living increases in his pension and Social Security benefits and that appellee had no new source of income. A Magistrate Decision was filed on June 24, 1998. The Magistrate, in her decision, found that appellant suffers from senile dementia, that she needs assistance, and that her condition constituted a change of circumstances since it occurred after the parties' divorce. For these reasons, the Magistrate recommended that appellee be ordered to pay appellant monthly spousal support in the amount of $1,000.00 "until the death of either party or the remarriage of [appellant]." The Magistrate further recommended in her decision as follows: "These payments may be accomplished by assigning the monthly benefit of the following annuities to the Plaintiff, or in any other manner that is economical and convenient to the Defendant. However, if the parties through counsel cannot agree to a different form of payment, the court orders the following annuities' monthly benefits to be paid to the Plaintiff:
Monthly Name Policy Benefit
Canada Life B401847 $100.49 Canada Life B402276 50.00 Canada Life B454013 312.48 Canada Life B454132 185.57 Midland Annuity (?) (Ex. L in 156.94 Plt's Trial Brief dated 8/19/96) Midland Annuity X65117 200.00 ________ Total $1,005.48
On July 6, 1998, appellee filed a Motion to Set Aside Order of Magistrate. After no hearing was set, appellant, on September 11, 1998, filed a Motion for Interim Orders. Pursuant to a Judgment Entry (Interim Orders) filed on September 15, 1998, the trial court ordered that appellee pay appellant monthly spousal support of $1,000.00 until the death of either party or appellant's remarriage. The same language regarding the manner of payment is contained in the trial court's September 15, 1998, Judgment Entry as in the Magistrate's Decision. A hearing before Judge David Stucki was held on October 5, 1998. Pursuant to a Judgment Entry filed on October 23, 1998, the trial court granted appellee's Motion to Set Aside and vacated the Magistrate's June 24, 1998, Decision and the interim orders filed on September 15, 1998. The trial court also dismissed appellant's February 4, 1998, Motion to Modify and adopted as its reasoning appellee's July 6, 1998, "Memorandum in Support of Motion to Set Aside Order of Magistrate." It is from the October 23, 1998, Judgment Entry that appellant prosecutes this appeal, rasing the following assignment of error:
 THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION TO MODIFY SPOUSAL SUPPORT AND IN NOT AWARDING APPELLANT MONTHLY SPOUSAL SUPPORT.
 I
Appellant, in her sole assignment of error, challenges the trial court's denial of her Motion to Modify Spousal Support. The Agreed Judgment Entry (Divorce) signed by the parties, reserved jurisdiction in the trial court to modify the award of spousal support. The trial court, therefore, had the authority to do so. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64. See also R.C. 3105.18. Appellant specifically contends that the trial court's failure to modify spousal support constitutes an abuse of discretion. Modifications of spousal support are reviewable under an abuse of discretion standard. Booth v. Booth (1989), 44 Ohio St.3d 142. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. "Modification of a spousal support award is appropriate only when there has been a substantial change in the circumstances of either party that was not contemplated at the time the existing award was made." Moore v. Moore (1997), 120 Ohio App.3d 488, 491, citing Leighner v. Leighner (1986), 33 Ohio App.3d 214, 215. See R.C.3105.18(E). To justify a modification of spousal support, there must be a drastic change in the economic situation of either party. Wolfe v. Wolfe (1976), 46 Ohio St.2d 399. Once a change in circumstances is found, the court must consider what amount of spousal support is reasonable. Appellant, in support of her motion for modification, presented evidence of a substantial change in her economic circumstances since the time of the parties' 1997 divorce decree. Evidence was presented establishing that since the divorce, appellant has been diagnosed with senility dementia, that she needs health care assistance costing $1,000.00 per month, and that her condition is not expected to improve significantly. In short, appellant presented evidence demonstrating that "infirmity arising from advanced age and ill health significantly reduced her individual income to a level substantially below her pre-divorce standard of living." Lenick v. Lenick (Dec. 16, 1994), Richland App. No. 94-CA-22, unreported at 2. Since there was a substantial change in appellant's financial circumstances, the court must next determine whether there has been a substantial change in appellee's ability to pay. Norris v. Norris (1982), 13 Ohio App.3d 248. From 1996 to 1997, appellee's unadjusted federal income increased from $38,016.00 to $44,060.00, for a total increase of $5,984.00. Both parties conceded at the June 16, 1998, hearing that appellee had no new source of income and that appellee's income increased due to cost of living adjustments in his Social Security and STRS pensions. A comparison of appellee's 1996 and 1997 federal tax returns evidences that appellee received only an increase of $6.00 from 1996 to 1997 in his Social Security benefits. The remaining increase in his income from 1996 to 1997 is, therefore, clearly attributable to a cost of living adjustment in his STRS pension benefits. The Agreed Judgment Entry (Divorce) which was filed on March 19, 1997, stated as follows: `It is HEREBY ORDERED that during [appellee's] lifetime, [appellant] shall not have any property right or interest in [appellee's] State Teachers Retirement System monthly benefits."
As demonstrated by the above language, appellant has no property right or interest in appellee's STRS monthly benefits or, correspondingly, in any cost of living adjustment in the same. The only other increase in appellee's income from 1996 to 1997 was the minimal increase in appellee's Social Security. The appellee also had the income from his annuities. This amount had not increased since the divorce decree. The divorce decree granted the annuities to the appellee (with minor exceptions). It is clear from the language of the divorce decree, and the particular circumstances of this case, including, but not limited to the ages of the parties when they married, that each party was to receive his or her separate property free and clear of any claims of the other party any time in the future. For the foregoing reasons, this court finds that the trial court's decision vacating the Magistrate's June 24, 1998, decision and dismissing appellant's Motion to Modify was not arbitrary, unreasonable or unconscionable. Appellant's sole assignment of error is denied.
The Judgment of the Stark County Court of Common Pleas, Domestic Relations Division, is affirmed.
By Edwards, J. Gwin, P.J. and Farmer, J. concur